IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KENNEDY WHEELER,

     Petitioner,                          CASE NO. 2:08-cv-965
                                                 JUDGE GRAHAM
v.                                    MAGISTRATE JUDGE KEMP

WARDEN, ROSS CORRECTIONAL
INSTITUTION,

     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## I. PROCEDURAL HISTORY AND FACTS

The procedural history of this case is summarized as follows. On January 24, 2003, petitioner was indicted by a Franklin County Grand Jury on one count of burglary, one count of theft, three counts of receiving stolen property, one count of aggravated burglary, one count of aggravated robbery, one count of kidnaping, four counts of rape, one count of gross sexual imposition, and two counts of having a weapon while under disability. On February 20, 2003, petitioner was indicted by a Franklin County Grand Jury on one count of aggravated burglary, one count of kidnaping, one count of aggravated robbery, and three counts of rape. On July 16, 2003, petitioner pleaded guilty to one count of burglary, one count of aggravated burglary, one count of rape and one count of receiving stolen

property in the first case.  He also pleaded guilty to one count of aggravated burglary and one count of rape in the second case.   Petitioner was sentenced to a total of thirty years in prison.  *Exhibits 1-5 to Return of Writ*.

Petitioner filed notices of  appeal to the Franklin  County Court of Appeals in both cases.  He raised two issues on appeal: that his guilty pleas were not knowingly and voluntarily entered, and that the trial court erroneously found him to be a sexual predator. These issues were raised by way of both an *Anders* brief and petitioner's own *pro se* filing. *Exhibits 7 and 9 to Return of Writ*.  On September 16, 2004, the Court of Appeals affirmed petitioner's convictions and sentences.  *Exhibit 11 to Return of Writ*.  Petitioner did not file an appeal to the Ohio Supreme Court.

Petitioner, again proceeding *pro se*,  filed an application to reopen his appeal pursuant to App.R. 26(B) on December 28, 2004.  *Exhibit 12 to Return of Writ*.  He set forth the following assignment of errors (reprinted verbatim):

1.  Appellate Counsel fail to raise the Circumstances that militate against classification, also the Appellate Counsel fail to raise the legal effect of the stipulation to sexual predator finding.

2.  Trial Court erroneously found the Appellant to be a sexual predator by stipulation.

3.  Trial Counsel was ineffective by suborn perjury statements, and planted evidence denying the Appellant constitutional right six amendment to have Counsel for defense, and to an fair trial.

4.  Prosecutor Misconduct, State submitted false and mis-leading facts and planted evidence to the Court's, denying the Appellant constitutional right to an fair trial and to have assistance of counsel for defense.

2

> 5. Prosecutor Mis-Conduct, The State denied the Appellant constitutional right to an fair trial by entering to an agreement to influence the testimony of an inmate to perjure himself.

*Id.*   On March 10, 2005, the appellate court denied his Rule 26(B) application.  *Exhibit 14 to Return of Writ*.  Petitioner did not file an appeal to the Ohio Supreme Court.

On March 31, 2004, he filed a petition for post-conviction relief pursuant to R.C. §2953.21 asserting claims of ineffective assistance of counsel and prosecutorial misconduct. *Exhibit 4 to Return of Writ*.  The trial court concluded that these claims were without merit and dismissed the petition by order dated November 9, 2004.  *Exhibit 6 to Return of Writ*. Petitioner did not file an appeal.

 On September 23, 2004, petitioner filed a motion to withdraw his guilty pleas in both cases.  *Exhibit 15 to Return of Writ*.  In the memorandum in support of his motion, petitioner argued the ineffectiveness of his trial counsel.  *Id*.  In his supporting affidavit attached to the motion, petitioner set out the version of the facts which he believed supported his claim of ineffective assistance of counsel and included some discussion of statements made by the prosecutor he alleged to be untrue or misleading. *Id*.  The trial court held that petitioner's ineffective assistance of counsel and prosecutorial misconduct claims had already been found to be without merit  in connection with petitioner's motion to vacate his sentence.  *Exhibit 18 to Return of Writ*.  Further, the trial court held that the issue of whether petitioner had knowingly, voluntarily, and intelligently entered his guilty plea had been decided and was barred by the doctrine of *res judicata*.  *Id*.  Consequently, the trial court denied petitioner's  motion to withdraw his guilty plea by order dated

October 13, 2006.  *Id.*

Petitioner appealed this decision to the Court of Appeals of Franklin County on January 19, 2007.  *Exhibit 19 to Return of Writ.*  He raised the following assignments of error, quoted directly:

1. Did Trial Court err in denying the appellant motion to withdraw plea or an evidentiary hearing pursuant to crim. r. 32.1, manifest miscarriage of injustice base on misconduct by the prosecution and having ineffective assistance of counsel for giving and affirming false and misleading statement of facts, denying the appellant constitutional due process right to an fair trial?

2. Ineffective Assistance of Counsel:

a. Did Trial Counsel affirm false statements given by the prosecution and violated the appellant constitutional due process rights?

b. Did Trial Counsel violate the Appellant six amendment right to have effective assistance for his defense?

c. Was Appellant due process rights violated?

3. Prosecutor Misconduct:

a. Did the Prosecution give false and misleading facts to the trial court?

b. Did the Prosecution violate the Appellant constitutional due process rights to be sentence on accurate information?

c. Did the Prosecution denied the Appellant due process rights to an fair trial, by giving false and misleading facts to the trial court?

4. Did Trial Court fail to inquired and determine: if the Appellant was entering his guilty plea voluntarily?, which is required by Crim.R.11(2a).

*Id.* The Franklin County Court of Appeals determined that these assignments of error were without merit by order dated June 26, 2007. *Exhibit 23 to Return of Writ.*

On August 10, 2007, petitioner, proceeding *pro se*, filed an appeal to the Ohio Supreme Court. *Exhibit 24 to Return of Writ.* He asserted the following propositions of law (in these exact words):

I. Did Trial court err in denying the appellant motion to withdraw plea or an evidentiary hearing pursuant to cr.r. 32.1 manifest miscarriage of justice base on misconduct by the prosecution and having ineffective assistance of counsel, for giving and affirming false evidence and misleading facts, denying the appellant constitutional due process right to an fair trial?

II. Trial court err in denying the appellant motion to withdraw plea or an evidentiary hearing pursuant cr.r. 32.1 manifest miscarriage of justice, base on mis-conduct by the prosecution and having ineffective assistance of counsel, for giving and affirming false evidence and misleading facts to the court, denying the appellant constitutional right to an fair trial, and violation of due process?

III. Trial Court err in denying the appellant motion to withdraw plea or an evidentiary hearing pursuant to cr.r 32.1 manifest miscarriage of justice, base on mis-conduct by the prosecution and having ineffective assistance of counsel, for giving and affirming false evidence and misleading facts to the court, denying the appellant constitutional right to an fair trial, and violating his constitutional due process right.

IV. Trial Court err by accepting Appellant guilty plea without first determining if he was doing so willfully, and voluntarily, which is required by cr.r. 11c(2a).

*Id.* On October 31, 2007, the Oho Supreme Court denied leave on grounds that the appeal did not involve any substantial constitutional question. *Exhibit 26 to Return of Writ.*

5

On October 23, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds raised on the face of the petition, and reprinted *verbatim*:

> GROUND ONE: Trial Court err by accepting defendant guilty plea without first inquiring and determining if he was doing so willingly, voluntarily, knowingly, and intelligently pursuant to Crim. Rule 11C(2a) and 11C(2b) violating the defendant due process right to the 14th Amendment to the Constitution.

> GROUND TWO: Prosecutor Misconduct: Prosecutor gave false and misleading statements of facts to the trial court, by stating possession of Ms. Danna Butt credit card, which is false, also falsify that the defendant rape Ms. Butt.  Misstated that the defendant on the charge of burglary was seen using Carol Raubenolt credit card which also not true, and misstated facts that on the charge of rape the victim Jing Sun initial and stated the defendant rape her.

> GROUND THREE: Ineffective assistance of trial counsel: Trial Counsel failed to Object to the Prosecutor giving false and misleading facts to the Trial Court, denying the Defendant 6th Amendment and 14th Amendment Right, After Defendant inform him that he was'nt [sic] guilty of those charges.

> GROUND FOUR: Defendant 14th Amendment Rights Violated

> > Supporting Facts: The Prosecution violated the Defendant right to be convicted and sentence on ground of accurate information giving to the Trial Court.  Prosecution knew that the information they were given to the Trial Court was false, and fail to correct it.

> GROUND FIVE: The Petitioner due process rights, constitutional right to a grand jury indictment and to notice of all the essential elements for which he was charged were violated by the State's failure to include a mens rea element into the counts.

It is the position of the respondent that petitioner's claims have been waived or are

6

procedurally defaulted. Alternatively, respondent argues that petitioner's claims are not cognizable in federal habeas corpus or raise only issues of state law. Finally, the respondent contends that petitioner's claims fail on their merits. For the following reasons, the Court finds petitioner's claims to be procedurally defaulted or without merit.

## II. PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.;Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam; Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982);*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and

that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

## A.  CLAIM ONE

In his first claim, petitioner asserts that the trial court failed to inquire or determine whether his guilty pleas were made "willingly, voluntarily, knowingly, and intelligently pursuant to [Ohio] Crim. Rule 11C(2a) and 11C(2b)" and that he thereby was denied due process.

To the extent that petitioner asserts a violation of state law, such claim fails to present an issue appropriate for federal habeas corpus relief.  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.

8

1988).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition.  *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985)).  Only where the error resulted in the denial of fundamental fairness will habeas relief be granted.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

As to the federal constitutional issue raised, to the extent that such claim may rely on evidence that is not readily apparent from the face of the record, petitioner failed to raise this issue in his post-conviction petition under Ohio R.C. §2953.21.  *Exhibit 4 to Return of Writ*.  Any attempt now to present such a claim to the state courts in an untimely and successive petition would most certainly be time-barred. [1]  His off-the-record claim,

_____

[1] O.R.C. §2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

9

therefore, is procedurally defaulted, as discussed below.  The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default.

Petitioner did assert on direct appeal that his guilty plea was not knowing, intelligent or voluntary; however, he failed to file an appeal of the appellate court's decision to the Ohio Supreme Court.  He may still do so, under Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a).[2]  Because this state court remedy remains available, his

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an inmate for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

The record does not reflect that petitioner could meet these requirements.

    [2] Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a) provides:

10

claim is unexhausted.

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir.1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). Where alternative state remedies are available to consider the same claim, exhaustion of one of these remedies is all that is necessary.

As previously discussed, petitioner again attempted to present his claim that his guilty plea was not knowing, intelligent and voluntary in his motion to withdraw guilty plea. The state appellate court refused to address the issue in those proceedings, because petitioner had already raised this claim in post conviction proceedings, and on direct

---

In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the appellant may seek to file a delayed appeal by filing a motion for delayed appeal and a notice of appeal. The motion shall state the date of entry of the judgment being appealed and adequate reasons for the delay. Facts supporting the motion shall be set forth in an affidavit. A copy of the court of appeals opinion and the judgment entry being appealed shall be attached to the motion.

appeal. *Exhibit 18 to Return of Writ*, p. 7.[3]

---

[3]  The state appellate court rejected petitioner's appeal of the trial court's denial of his motion to withdraw his guilty pleas in relevant part as follows:

The issue whether appellant's guilty pleas were knowingly and voluntarily entered into has previously been decided by this court in appellant's direct appeal of his convictions. Specifically, in *Wheeler I*, at ¶ 8-9, this court held in relevant part:

The transcript of the plea hearing in the present case simply reveals full and thorough compliance with the dictates of Crim.R. 11 and attendant case law in the colloquy between the court and appellant. The prosecutor outlined the plea bargain, detailed the offenses with which appellant was charged and those he would plead guilty to, and the potential sentences for each offense as detailed on the plea forms signed by appellant. The court also explained the charges against appellant and set forth the 30-year aggregate sentence jointly recommended by defense counsel and the prosecution. While the court did not fully develop each element of all the charges to which appellant would plead guilty, the court asked appellant if he needed the charges explained to him, and appellant indicated that he understood, did not require the court to explain the charges, and that he had thoroughly discussed the charges with his attorney. The court set forth at length the constitutional rights he was foregoing by entering his pleas, asking appellant at each phase whether appellant understood the rights he was giving [up] and the potential sentence to be imposed. Trial counsel for appellant stated on the record that appellant was normally and intelligently involved in his defense.

The totality of the circumstances reflected in the transcript fully indicate that appellant's plea was made knowingly, intelligently and voluntarily, and in compliance with all procedural safeguards of his constitutional rights. * * *

Accordingly, this court's prior determination that appellant's pleas were knowing and voluntary, and in compliance with Crim.R. 11, remains the law of the case for purposes of this appeal. *State v. Ikharo*, Franklin App. No. 05AP-167, 2005-Ohio-6616, at ¶ 9. Further, in appellant's petition to vacate or set aside his sentences, appellant raised claims of ineffective assistance of trial counsel and prosecutorial misconduct. In its decision and entry rendered November 9, 2004, the trial court addressed and

Because petitioner's claim is plainly without merit and because he has already attempted to present his claims in repeated state court proceedings, although his claim remains unexhausted, in the interests of judicial economy, this Court will nonetheless address the merits of his on-the-record claim that his guilty plea was not knowing, intelligent and voluntary.

> Although there is a strong presumption in favor of requiring the exhaustion of available state court remedies, the requirement is not jurisdictional and may be excused under

---

rejected appellant's claims of ineffective assistance of counsel and prosecutorial misconduct as pertaining to appellant's entry of his guilty pleas. Appellant did not appeal the trial court's denial of his petition to vacate or set aside his sentences, and, thus, the trial court's determination as to those claims similarly remains the law of the case. *See State Farm Fire & Cas. Co. v. Ohio Dept. of Transp.* (Mar. 6, 2001), Franklin App. No. 00AP-768 (because defendant had opportunity to cross-appeal denial of summary judgment and denial of motion to dismiss, those unchallenged rulings became the law of the case); *Field v. Mans* (C.A.1, 1998), 157 F.3d 35, 40 (law of the case doctrine "prevents a litigant from resurrecting an issue that has already been decided by a lower court and that has gone unchallenged on appeal").

Finally, even assuming some of the issues raised by appellant are properly before this court for consideration, based upon our review of the record, including the allegations set forth in the motions, we agree with the trial court's determination that appellant failed to demonstrate manifest injustice necessary for a post-sentencing plea withdrawal. Further, a trial court is not obligated to hold an evidentiary hearing where a defendant has failed to set forth facts that would show manifest injustice. *State v. Williams,* Cuyahoga App. No. 87963, 2007-Ohio-630, at ¶ 17. Thus, the trial court did not err in failing to grant a hearing, nor did it abuse its discretion in denying appellant's motions to withdraw his pleas.

*State v. Wheeler*, 2007 WL 1821695.

certain circumstances- i.e ., in cases where the unexhausted claims are plainly meritless, or the petition does not even raise a colorable federal claim, and it therefore is in the interests of the parties and judicial economy to promptly address the merits of the petition. *See Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). Moreover, 28 U.S.C. § 2254(b) (2) expressly provides that an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies.

*Smith v. Warden*, 2009 WL 4281095 (S.D. Ohio Nov. 24, 2009).

The state appellate court rejected his claim as follows:

The transcript of the plea hearing in the present case simply reveals full and thorough compliance with the dictates of Crim.R. 11 and attendant case law in the colloquy between the court and appellant. The prosecutor outlined the plea bargain, detailed the offenses with which appellant was charged and those he would plead guilty to, and the potential sentences for each offense as detailed on the plea forms signed by appellant. The court also explained the charges against appellant and set forth the 30-year aggregate sentence jointly recommended by defense counsel and the prosecution. While the court did not fully develop each element of all the charges to which appellant would plead guilty, the court asked appellant if he needed the charges explained to him, and appellant indicated that he understood, did not require the court to explain the charges, and that he had thoroughly discussed the charges with his attorney. The court set forth at length the constitutional rights he was foregoing by entering his pleas, asking appellant at each phase whether appellant understood the rights he was giving and the potential sentence to be imposed. Trial counsel for appellant stated on the record that appellant was normally and intelligently involved in his defense.

The totality of the circumstances reflected in the transcript fully indicate that appellant's plea was made knowingly, intelligently and voluntarily, and in compliance with all procedural safeguards of his constitutional rights. To the extent

14

> that the assignments of error in both counsel's *Anders* brief and appellant's pro se brief assert error at the plea hearing and sentencing, the assignments of error are overruled.

*State v. Wheeler, supra,* 2004 WL 2065649.

These factual findings are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

15

> [A] decision of the state court is "contrary to" such clearly
> established federal law "if the state court arrives at a
> conclusion opposite to that reached by this Court on a question
> of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts." *Id*. at
> 413. A state court decision will be deemed an "unreasonable
> application" of clearly established federal law "if the state
> court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case." *Id.* A federal habeas court may not
> find a state court's adjudication to be "unreasonable" "simply
> because that court concludes in its independent judgment that
> the relevant state-court decision applied clearly established
> federal law erroneously or incorrectly." *Id.* Further, the federal
> habeas court should not transform the inquiry into a subjective
> one by inquiring whether all reasonable jurists would agree
> that the application by the state court was unreasonable. *Id*.

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000).  Petitioner has failed to meet this standard here.

Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir.1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the Court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). A criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead

16

guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

As discussed by the state appellate court, the transcript of petitioner's guilty plea hearing indicates that the prosecutor recited the terms of petitioner's written guilty plea, including the joint recommendation of counsel that petitioner be sentenced to thirty years incarceration. *See Transcript of Guilty Plea, Exhibit 3 to Return of Writ*. Petitioner indicated that he understood those terms, as well as the nature of the charges against him. He stated that he had discussed the charges and the terms of his guilty plea with his attorney and he understood the terms of his guilty plea. He also stated that he understood all of the rights he was waiving by entry of his guilty plea. The trial court advised petitioner of all of the rights he was waiving by entry of his guilty plea. Petitioner at all times indicated that he understood. He had no questions. He was satisfied with the representation of counsel. He admitted his guilt. The prosecutor recited the statement of facts as follows:

> [I]n Case No. 03CR-1023, this offense involved a victim by the name of Jing Sun. This victim is present today....
>
> This offense occurred on January 3 at approximately 10:00 p.m. Ms. Sun had come home to her address at 588 Stinchcomb Drive, apartment No. 3 in Columbus, Ohio. As she approached her apartment... she encountered a male who had been exiting her apartment building. He did hold the door for her as she walked inside.
>
> She went into the second floor apartment, unlocked the door, went inside and locked the door. She observed nobody. She did live with three others. She went in the kitchen and noticed the trash needed to be taken out. She opened the door up, unlocked it, closed it behind her, leaving it unlocked to take the trash to the rear of her building.

After dumping the trash, she walked into her building and to her apartment door; she opened the unlocked door and went inside and locked the door.  She went into the bedroom to change her clothes.

When she pushed the door open and turned on the light, a male, wearing a knit ski mask over his face, stepped out from behind the door, pointed a gun at her, a handgun, she described as a dark colored revolver.

She stated at this time she could only see his eyes, but she recognized him as the same male who held the door open for her when she arrived at the apartment building.

While pointing the gun at her, he stated she should get on the bed face down.  He then asked where her purse was.  She stated she had money in the pocket of her pants, which she stood up and gave him.

The male took the money and told her to go back to the bed. She went back to the bed and lay face down.  She could hear the defendant opening and closing the drawers in her dresser.

He then said to her that he found $600 in her bottom drawer. ...

He said, "I won't hurt you, but I'm going to slow you down." He then pulled her pants down to her ankles and pulled her top over her head to cover her face.  She was still face down on the bed when she heard him exit the room and go to the two other bedrooms in the apartment, that being the rooms of her roommates, and could hear him opening and closing the doors and drawers.

He then came ... back to the bedroom and asked where the other purses were.  She told him she didn't know.  He told her to stand up.  She complied.  He then took off her pants and her underwear.

At that time he did insert his finger into her rectum and into her vagina.  He told her to lay back on the bed and scoot up

18

and open her legs.  At one point he placed the gun on the desk beside the bed.

At that point she began resisting.... He grabbed the gun back up. ...

The suspect then told the victim to scoot back and sat on top of her.  She kept pleading with him not to hurt her.

He stated, "I took your money and your computer.  I won't hurt you."  Then he inserted his finger into her vagina again and stated, "Give it up."  She stated she began to struggle with him.

At this point she heard the door being unlocked and opened.  He told her, "Be quiet.  You don't want me to shoot your roommate."  As the roommate entered the apartment, he told to her, "Say hi."  She didn't say anything because the roommate didn't say anything.  He went into his room.

The male stood up and left the apartment, leaving the laptop behind.  She stated she went to roommate's room and told him what had happened, and they called 911.

The roommate also provided that he did not see anybody, but he could tell that somebody had been in his bedroom.  He had change missing.

***

Subsequent[ly] the victim... was shown a photo array containing the defendant's photo in it.  She was able to identify the defendant.

... [T]he defendant was arrested on January 13, 2003.  They did execute a search warrant on his residence that same date and recovered from that residence a Smith and Wesson blue steel revolver and pair of brown garden gloves.

... [T]he victim... did identify both the revolver and the gloves appearing to be the same as those the defendant had in her

19

apartment on this date.

Additionally... there was a DNA comparison to the DNA found on the brown gloves recovered from the defendant's apartment, and they did contain the DNA of the victim, Jing Sun, on that.

*See id.*

In Case No. 03CR-403... that victim is a Carol Raubenolt. That offense occurred on the same date as the offense against Jing Sun. This actually is the same address, which is 588 Stinchcomb Drive, only it is apartment No. 8, which is the third floor versus Ms. Sun on the second floor.

The victim in this case was not home at the time....

[T]here were various items removed, including a credit card of the victim, and the defendant would be later observed to be using the credit card of Ms. Raubenolt. They managed to get a license plate of the defendant, and then they put surveillance on him, and he was observed to be using her credit card on ... January 13....

[T]he rape offense that occurred with Kristi Kent again happened on Stinchcomb Drive. This was at 668 Stinchcomb Drive, apartment No. 7. This offense occurred on January 7. Again, your Honor, the defendant entered Ms. Ken't apartment. He did have a gun. He ordered her to lay face down on the bed. While he also ordered her not to look at him, he did take her laptop computer and credit cards.

... [H]e then digitally penetrated her.... [S]he stated she then heard something that sounded like plastic, and the defendant then performed anal intercourse on her.

He took all of her phones... so she was unable to call for any help at that time. He told her that he had another person that was with him, and that she would be killed if she got up and contacted the police.

***

[W]hen she was taken to the hospital, they did again complete a rape kit.  There was swabs taken.... of saliva, and there was sufficient amount for testing that was tested and did come back as a match to the defendant....

... [F]inally... there was a credit card that was taken out of an aggravated burglary and actually a rape offense that had occured.  The victim in that case was Dana Butt; however, because the defendant again had a mask on, she was unable to identify him, and we did not have any DNA sampling.  However, on January 13 when the executed a search warrant, the defendant was found to be in possession of the credit card of Ms. Butt, so he was charged with receiving stolen property in this case.

.... [A] well... we have an inmate, Steven Womack, who had numerous discussions with the defendant, and the defendant acknowledged that he was, quote, the campus rapist to Mr. Womack, gave various details that had not been released to the public that supported the defendant was guilty of these offenses.

[A]dditionally... we were able to confiscate a letter that the defendant wrote to his girlfriend.... [I]n the letter he attempted to establish an alibi with her for the dates of these offenses, telling her to rehearse this information and to provide this information to the police.

*See id.*  Petitioner did not disagree with these facts.  When asked for a statement, he stated solely that he wanted to apologize, that he was on drugs and "I know a lot of that made my thinking real bad.  I apologize, I'm sorry, and I just ask the Court for mercy."  *Id.*, at 34-35.

Thus, the record is without support for petitioner's claim that his guilty plea was not knowing, intelligent or voluntary.  To the contrary, he appeared to understand both the rights he was waiving by pleading guilty and the nature of the charges.  Given the detailed

21

recitation of the facts in open court, and the fact that the nature of the charges of burglary, rape, and receiving stolen property are not complex and are implicated by these facts, he cannot now claim any lack of understanding of the nature of the offenses to which he pleaded guilty.  Finally, and given these conclusions, nothing in the record indicates that the state appellate court's rejection of this claim was unreasonable so as to warrant federal habeas corpus relief.  *See* 28 U.S.C. 2254(d), (e); *Williams v. Taylor, supra.*   His claim is without merit.        To the extent that petitioner's claim relies on matters not apparent from the face of the record, and which he failed to raise in post conviction proceedings, the Court must  decide whether the procedural rule at issue constitutes an adequate and independent basis upon which to foreclose review of the petitioner's federal constitutional claims.  This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims.  *See Maupin v. Smith*, 785 F.2d at 138.  The time periods for filing post conviction petitions, and the requirement that all claims be raised in the first such action, serves the state's interest in early adjudication of claims, and prevention of piecemeal litigation.  Further the Ohio courts strictly enforce the rules concerning untimely and successive post conviction actions.  The third part of the *Maupin* test has been met with respect to this claim.

Petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent has been waived or is plainly without merit.  Petitioner may still obtain review of this claim, to the extent that it relies on matters not readily apparent from the face of the record, if he establishes cause for his procedural defaults, as well as actual prejudice from the

alleged constitutional violations.  In his traverse, petitioner claims essentially that he ran out of time to pursue his claim.  Petitioner has failed to establish cause for the procedural default of this claim.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 47 U.S. at 491; see also *Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.  Petitioner pleaded guilty, and the first claim he raises does not go to guilt or innocence.  Further, there is nothing in the record to suggest that he is actually innocent of the crimes to which he pleaded guilty.

## B.  CLAIMS TWO  THROUGH FOUR

Petitioner's second, third, and fourth claims relate to the alleged conduct of both the prosecutor and petitioner's trial counsel at the plea hearing.  In his second claim, petitioner asserts that the prosecutor engaged in misconduct during the plea hearing by misstating various facts to the trial court.  Petitioner does not assert, in connection with this claim, which particular constitutional right he believes is at issue as a result of this misconduct. In his third claim, petitioner contends that his trial counsel was ineffective for failing to object to the prosecutor's misstatement of the facts even after petitioner informed counsel that he was not guilty of the facts as described by the prosecutor.  Petitioner claims that the ineffective assistance of counsel violated his Sixth and Fourteenth Amendment rights.  His fourth claim does not appear to be an independent claim but rather an explanation that his

23

Fourteenth Amendment rights were violated by the prosecutor's knowingly providing false information to the trial court. Consequently, the Court construes petitioner's second and fourth claims as one claim asserting a violation of his Fourteenth Amendment rights arising from alleged prosecutorial misconduct at the plea hearing.

None of these claims were raised by petitioner on direct appeal. In his *pro se* application to reopen his appeal pursuant to Rule 26(B), petitioner raised several issues including one relating to trial counsel's ineffective assistance and one relating to prosecutorial misconduct which are similar to the claims alleged here. The Court of Appeals considered all of petitioner's issues together and concluded that, with the exception of one issue not relevant here, petitioner had raised issues outside the record. The Court of Appeals denied petitioner's application and petitioner did not appeal to the Ohio Supreme Court.

Petitioner raised claims of ineffective assistance of trial counsel and prosecutorial misconduct in his post-conviction motion to vacate or set aside his sentence pursuant to Ohio R.C. §2953.21. *Exhibit 4 to Return of Writ*. These claims were denied by the trial court. *Exhibit 6 to Return of Writ*. Petitioner did not file an appeal of the trial court's decision and is now precluded from doing so under Ohio's doctrine of *res judicata*. The state courts were never given the opportunity to enforce the procedural rule at issue with respect to these claims due to the nature of petitioner's procedural default.

This remains so regardless of the extent to which petitioner raised them in connection with his motion to withdraw his guilty pleas pursuant to Ohio Crim.R. 32.1.

24

In ruling on this motion, the trial court held that petitioner's ineffective assistance of counsel claim was previously decided and found to be without merit in connection with his petition to vacate or set aside his sentence. *Exhibit 18 to Return of Writ*, p. 6. In considering the petitioner's appeal of the trial court's decision, the Franklin County Court of Appeals noted that the petitioner had not appealed the trial court's first ruling on the issues of prosecutorial misconduct and ineffective assistance of counsel and, therefore, that ruling had become the law of the case. *Exhibit 23 to Return of Writ*, p. 5. Alternatively, the Court of Appeals noted that to the extent any issues were properly raised before it, the trial court was correct in holding that petitioner had failed to demonstrate the manifest injustice necessary under Ohio law for a post-sentence plea withdrawal. This alternative holding does not revive petitioner's claims for purposes of habeas corpus review. *See Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003).

Consequently, the first and second parts of *Maupin* have been met with respect to these claims. Further, as discussed above, the procedural doctrine of *res judicata* is regularly and consistently applied by the Ohio courts. Thus, the third prong of *Maupin* has been satisfied as well.

As with his first claim, petitioner has waived his right to present these claims. Further, he has not established any cause for his procedural default of these claims. Moreover, as discussed above, the Court does not deem this to be an extraordinary case where a constitutional violation has resulted in the conviction of an innocent individual.

**C. <u>CLAIM FIVE</u>**

25

Petitioner's fifth claim relating to the state's alleged failure to include a *mens rea* element in the counts of the indictment was never raised before any Ohio court.  This claim appears to be based on the Ohio Supreme Court's decision in *State v. Colon*, 118 Ohio St.3d 26, 885 N.E. 2d 917, 919 (2008) (Colon I) as clarified by *State v. Colon*, 119 Ohio St.3d 204, 893N.E.2d 169, 170 (2008) (Colon II).  Respondent claims that petitioner has waived this claim because he did not present it to any state court.

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  *Buell v. Mitchell*, 274 F.3d 337, 349 (6ᵗʰ Cir. 2001).  The exhaustion requirement is met when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6ᵗʰ Cir. 1994), *citing Manning v. Alexander*, 912 F.2d 878, 881 (6ᵗʰ Cir. 1990).  However, a habeas court need not wait for exhaustion if it determines that a return to state court would be futile.  *Lott v. Coyle*, 261 F.3d 594, 608 (6ᵗʰ Cir. 2001).  Where a petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Buell*, 274 F.3d at 349.  Under the circumstances presented here the Court does not believe the Ohio state courts would entertain petitioner's fifth claim and as a result it may be deemed procedurally defaulted.

To the extent petitioner would be entitled to a merits review of his claim, he must demonstrate cause and prejudice to excuse his failure to raise the claim in state court, or that a miscarriage of justice would occur were the habeas court to refuse to address the claim on its merits.  *Seymour v. Walker*, 224 F.3d 542, 550 (6ᵗʰ Cir. 2000) *citing Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977). Petitioner claims that he did not raise this claim in state court because the Ohio Supreme Court's ruling in the *Colon* cases had only recently been issued. To the extent that this explanation would constitute cause to allow this Court to examine the merits of his fifth claim, the petitioner cannot prevail. There is no constitutional requirement of a grand jury indictment in a state criminal proceeding. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972). Further, the sufficiency of an indictment is generally not reviewed in habeas corpus proceedings. *Foy v. Kelly*, 2010 WL 1416940 (N.D. Ohio March 19, 2010), citing *Knewel v. Egan*, 268 U. S. 442, 446 (1925). The only constitutional issue raised "is whether the indictment provides the defendant with sufficient information of the charged offense, to enable him to defend against the accusations." *Id*. citing *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002), *cert. denied*, 540 U.S. 853 (2003).

Here, petitioner's sole argument is that his indictment did not comply with the Ohio Supreme Court decisions in the *Colon* cases. It is well established that habeas relief is not available for a violation of state law. *Ervin v. Warden, U.S. Penitentiary*, 2010 WL 1257900 (S.D. Ohio Jan. 12, 2010). Further, the Ohio Supreme Court clarified in *Colon II* that "its holding in Colon I applies prospectively only, and to cases pending on April 9, 2008, when Colon I, was decided." *Leonard v. Warden*, 2009 WL 1416064 (S.D. Ohio May 19, 2009). Petitioner's case was no longer pending in any Ohio court on April 9, 2008. For all of these reasons, petitioner's fifth claim also fails.

## IV. RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action

27

be **DISMISSED**.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge